IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEOFFREY A. GISH,
BOP ID 62152-019

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

MOTION TO VACATE
28 U.S.C. § 2255

CIVIL ACTION FILE NO.
1:14-CV-2444-CAP-JKL

CRIMAL ACTION FILE NO.
1:10-CR-370-CAP-JKL

## <u>FINAL REPORT AND RECOMMENDATION</u>

Movant filed a motion to vacate, set aside, or correct his sentence.  [Doc. 202.]  Respondent has filed a response.  [Doc. 217.]  Movant filed a reply and an amended reply.  [Docs. 226, 227.]  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion to vacate be **DENIED**.

## I.    BACKGROUND

In 2010, Movant and his co-defendant, Myra Ettenborough, were indicted by a federal grand jury of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371 (Count One), four counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (Counts Two through Five), and six counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts Six through Eleven).  [Doc. 1.]

A trial was held from September 7, 2011, through September 23, 2011.  A summary of the evidence is set forth below.

> Between 2004 and May of 2006, the purported investment firm of Weston Rutledge raised approximately $30 million from over 300 investors for primarily three investment programs. Geoffrey A. Gish was the head of Weston Rutledge.  Myra Ettenborough was Gish's office and operations manager, with responsibility for managing almost all aspects of the company's business, employee, and interactions with its investors. Ettenborough handled all mail, managed and reconciled Weston Rutledge's numerous bank accounts, handled all banking transaction, checks and wires, and processed all payments to investors.  Gish and Ettenborough communicated to investors how the programs worked, details of the investments' safety and security, the investments' performance and earnings and other information.  They also provided all other employees with the information provided to investors.
>
> Ettenborough also wrote a newsletter that was distributed to investors.  In one newsletter, she described how investors' principal would reside at a major bank in a non-interest bearing account with a block on it, which no one could touch during the investment period.  The newsletter also purported to report investment results.  Ettenborough provided standard document packages to investors showing substantial rates of return and created and distributed account statements to investors showing positive monthly earnings and increasing total account balances said to be from earnings.  In March 2006, the last full month for which there were statements, the account balances as shown on investor statements reached $34 million.
>
> In reality, virtually none of the representations made to investors was true.  Of the $30 million raised by Gish, approximately $12 million was returned to investors to satisfy earnings and principal withdrawal demands.  The rest went to Gish, Ettenborough, other third parties and various non-

2

investment purposes.  Ettenborough signed most of these checks.  None of the investment funds went to any trading activity of any kind.

Of course, the cash on hand at Weston Rutledge steadily declined over time.  Upside down from the beginning, the gap between investor statements and cash on hand grew to almost $34 million by March 2006.

Various investigations of Weston Rutledge took place, beginning in late 2004 when the Georgia Secretary of State securities division subpoenaed Gish and Weston Rutledge. This investigation resulted in a cease and desist order and a civil fine.  Instead of ceasing operations, Gish moved Weston Rutledge to a new office and resumed soliciting investors. Other investigations took place in both Arizona and Texas.

During this time, Gish and Ettenborough consulted a securities lawyer about their securities investment program Zamindari. They did not tell this lawyer about the Georgia investigation. Subsequently the lawyer withdrew his representation of Zamindari, informing him that his investment program was in violation of numerous securities laws and had the "indicia" of fraud.  Gish did not further communicate with the lawyer, nor attempt to recover the unexpended retainer paid to him out of an account funded by investor monies.

In March and April of 2006, the SEC instituted its own investigation of Gish and his investment programs.  On May 17, 2006, the SEC obtained a court order shutting down Weston Rutledge and appointing a Receiver for the business and approximately $1 million of investor funds remaining.

*United States v. Gish*, 518 F. App'x 871, 873-74 (11th Cir. 2013).

The jury convicted Movant of Counts One through Ten of the Indictment,

and acquitted him on Count Eleven.  [Doc. 110.]  Ettenborough was convicted of

3

Counts One through Three and Six through Seven.   [Doc. 111.]   This Court sentenced Movant to 240 months' imprisonment, three years' supervised release, and ordered Movant to pay $17,245,275.63 in restitution.   [Doc. 140.]   After Movant filed a timely notice of appeal, the Eleventh Circuit affirmed Movant's conviction and sentence by order dated May 16, 2013.  *Gish*, 518 F. App'x at 871. The Eleventh Circuit considered and rejected Movant's arguments that (1) the jury was improperly instructed on the theory of deliberate ignorance; (2) testimony of three lawyers regarding their communications with Movant should not have been admitted at trial; (3) evidence regarding the Georgia Secretary of State's investigation was improperly admitted under Federal Rule of Evidence 404(b); and (4) Movant was sentenced in error.  *Id.*  at 874-75.

Movant filed the present motion to vacate on July 15, 2014.  [Doc. 202.] The Government filed its response on October 21, 2016.  [Doc. 217.]  Movant filed a reply brief on January 3, 2017, and an amended reply brief on January 13, 2017. [Docs. 226, 227.]

## II.    RELEVANT LEGAL STANDARDS

## A.    The Standard for Relief Under § 2255

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States;

(2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is otherwise subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, __ U.S. __, 136 S.Ct. 267 (2015).

Matters decided on direct appeal cannot be re-litigated under § 2255, and matters that could have been raised on direct appeal, but were not, generally are foreclosed in § 2255 proceedings.  *Hidalgo v. United States*, 138 F. App'x 290, 291, 294 (11th Cir. 2005) (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004), and *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)).  Claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent (1) a showing of cause for the default and actual prejudice or (2) a showing of a fundamental miscarriage of justice or actual

innocence.  *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).  Thus, § 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232 (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); *see also Massaro v. United States*, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).

**B.**    ***Strickland v. Washington***

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's

performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).  To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, *i.e.*, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*   A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one."  *Id.* at 697.

### III.   DISCUSSION

In his motion to vacate, Movant raises the following challenges to his conviction and sentence:  (1) trial counsel was ineffective in failing to negotiate a plea deal; (2) trial counsel was ineffective at trial for failing to call certain witnesses; (3) trial counsel was ineffective for failing to seek a severance; (4) trial counsel was ineffective for failing to object to a variance between the

evidence and the court's instruction to the jury on materiality; (5) trial counsel was ineffective for failing to insist on jury instructions that would allow the jury to "parse out culpability on a temporal basis;" (6) appellate counsel was ineffective for failing to raise a Rule 43 error;[1] (7) appellate counsel was ineffective for failing to raise the trial court's refusal to give an alleged theory of the defense good faith jury instruction; (8) the trial court erred in conducting "supplemental jury instructions" without Movant being present or having waived his right to be present; (9) the trial court erred in refusing to give the jury his requested good faith jury instruction; and (10) the federal fraud statutes are unconstitutional.[2]   The undersigned will address each of these claims in the paragraphs that follow.

### A.     Challenges on the Basis of Ineffective Assistance of Counsel

#### 1.     Pre-trial Plea Negotiations

In Ground One of his motion to vacate, Movant claims that had his trial counsel told him that his good faith defense was "futile," he would have accepted a

---

[1] Movant initially inadvertently raised this claim as a Rule 32 error.  [Doc. 227 at 11.]

[2] Movant initially also claimed that his counsel was ineffective for failing to object at trial on the basis that the deliberate ignorance jury instruction improperly shifted the burden of proof to him.  In his amended reply brief, Movant concedes that his "claim is foreclosed" by the Eleventh Circuit's opinion affirming his conviction. [Doc. 227 at 10.]   Therefore, the undersigned will not address this merits of this claim.

favorable plea offer. [Doc. 202 at 14.] Movant argues that his counsel should have explained that the "determination of fraudulent intent was at the subjective discretion of the jury rather than an objective legal test." [Doc. 227 at 3.] The government rejects Movant's assertion that a good faith defense is futile, noting that specific intent to defraud is a required element of both mail and wire fraud offenses. The government further argues that even if counsel's performance was constitutionally deficient, Movant's after-the-fact assertion that he would have pled guilty is ineffective to prove prejudice because Movant has consistently maintained his innocence throughout the proceedings in this case.

After careful consideration, the undersigned agrees with the government. The assertion of a good faith defense in a mail or wire fraud case is not futile. Had the jury believed Movant's testimony that he acted in good faith and without specific intent to defraud his investors, he could have been found not guilty of those charges. Movant was convicted, not because the good faith defense is futile, but because the jury did not credit Movant's testimony that he acted in good faith. Accordingly, the undersigned does not agree that defense counsel's pursuit of the good faith defense was objectively unreasonable.

Movant has also failed to establish that he was prejudiced by his counsel's actions.  First, Movant has not alleged facts that show that a formal plea offer was made or what its terms were.  Moreover, Movant has not shown that

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that [Movant] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction and sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).  Movant's claim "that he would have pled guilty had he been properly informed is also undermined by his repeated claims of innocence."   *Osley v. U.S.*, 751 F.3d 1214, 1224 (11th Cir. 2014).  Movant maintained throughout both his trial and sentencing that he lacked the intent to defraud his investors.  [Doc. 173 at 10-244, Doc. 174 at 3-9; Doc. 175 at 30-36.]  Accordingly, it is highly speculative that Movant would have accepted a plea deal, especially considering that there is no way of knowing what terms would have been presented or accepted by the trial court.   For these reasons, this ineffective assistance of counsel claim must fail.

### 2.    Failure to Call Witnesses

Movant claims that his decision to go to trial was based in part on his belief that trial counsel would call certain favorable witnesses to support his defense.

Movant contends that trial counsel should have called the following favorable witnesses:

> 1.     Todd Merolla, an Atlanta attorney who reviewed the investment contracts and did not indicate that the contracts were suspicious, let alone fraudulent;
> 2.     David Sayid, a New York City securities attorney who examined the investments and considered them legitimate;
> 3.     Don Moses, a Kentucky attorney, who even has considerable criminal law experience, considered the investment plan legitimate; and
> 4.     Paul Gundermann, an Atlanta CPA, advised the business and contracts were legitimate.

[Doc. 202 at 15.]  Movant claims that had he known counsel was not going to call these witnesses to testify, he would have pled guilty, limiting his sentencing exposure to 60 months.  [*Id.*]  The government argues that Movant's claims are factually inaccurate and legally insufficient to challenge his conviction and sentence.  After careful consideration, the undersigned agrees with the government.

First, as noted above, there is no way of knowing with any degree of certainty what terms the government would have offered had Movant seriously pursued a plea deal.  Similarly, there is no way of knowing that Movant and, ultimately, the trial court would have accepted those terms.  To the extent that Movant's claim includes an assertion that trial counsel was ineffective for failing to call these witnesses at trial, the undersigned first notes that Paul Gundermann

testified at length at trial as a witness for the government and was cross examined by Movant's counsel.  [Doc. 168 at 191-224; Doc. 169 at 3-58.]

In addition, Movant's conjecture that the other three individuals could have testified to his innocence, without any affidavits from those co-defendants or specific examples of the testimony they would have provided, is insufficient to show, with any reasonable probability, that their testimony would have changed the outcome at trial.  *See Lynn v. United States*, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (finding that conclusory allegations regarding potential witness testimony are insufficient to support a § 2255 motion).  The burden of establishing prejudice under the *Strickland* test is "heavy where the [movant] alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative."  *Sullivan v. Deloach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (internal quotation marks omitted).  Accordingly, the undersigned finds that Movant has not met his burden of establishing prejudice with respect to this claim.

### 3.    Failure to Seek Severence

Movant argues that counsel was ineffective because he did not seek to sever Movant's trial from his co-defendant.  But defense counsel did, in fact, file a motion to sever, arguing that a joint trial would cause prejudice to Movant that

would be "undue and insurmountable."  [Doc. 24 at 3.]  The motion was denied.
[Doc. 37.]  Accordingly, the undersigned finds that this ineffective assistance of
counsel claim fails.

### 4.    Failure to Object to Jury Instruction on Materiality

Movant claims that his counsel was ineffective for failing to "object to the
variance between the evidence introduced at trial and the court's instructions on
the materiality element of the crime."  [Doc. 202 at 17.]  According to Movant,
because some investors testified that they understood their account statements to
contain estimated as opposed to actual earnings, the information in the statements
could not have been material to the investors' participation in his investment
programs.  [*Id.*]  The government responds that counsel is not ineffective for
failing to object to a pattern jury instruction and that there were other material
misrepresentations shown at trial to support Movant's conviction.

After careful consideration, the undersigned agrees with the government.
The trial court gave the pattern jury instructions on materiality for mail and wire
fraud.  Defense counsel "could reasonably have concluded that the jury instruction,
[which tracked the pattern jury charge,] was adequate."  *United States v. Fuchs*,
467 F.3d 889, 911 (5th Cir. 2006).  Accordingly, Movant has failed to establish
that his counsel's failure to object to a pattern jury charge was objectively

unreasonable.  Moreover, because he has not presented an alternate instruction that should have been given, Movant's claim that a different jury instruction would have resulted in a different outcome is speculative at best.  As a result, the undersigned finds that Movant has failed to meet his burden with respect to this claim.

### 5.      Failure to Request Jury Instruction Regarding Culpability on a Temporal Basis

Movant argues that his counsel was ineffective for not insisting "upon jury instructions that were consistent with the government's evidence, but allowed the jury to parse out culpability on a temporal basis.  That is, the jury could have found that [Movant] only developed the requisite intent sometime after his meeting with Attorney Carmack (October 2005)."  [Doc. 202 at 18.]  The government responds that this claim is without merit because "the court instructed the jury that it had to assess [Movant's] culpability for each count independently."  [Doc. 217 at 51.] The court's charge included the following instruction:

> Now, you will see that the Indictment charges that a crime was committed on or about a certain date and the government doesn't have to prove that the crime occurred on an exact date.  The government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged. . . . [E]ach count in the Indictment charges a separate crime against one or more of the defendants and you must consider each crime and the evidence relating to it separately. . . .  If you

14

> find a defendant guilty of one crime, that must not affect your
> judgment as to the other crime . . .

[Doc. 174 at 104-06.]

This instruction sufficiently directs the jury to consider each charge of the indictment and the evidence supporting it separately. Moreover, Movant has again failed to specify a jury instruction that his counsel should have requested and has failed to establish that such instruction would have led to a different result. Accordingly, the undersigned finds that Movant has shown neither constitutionally deficient performance by his counsel or prejudice to himself.

### 6.     Appellate Counsel's Failure to Raise Rule 43 Error

Movant claims that his appellate counsel was ineffective for failing to present a Rule 43 error on appeal. According to Movant, Federal Rule of Criminal Procedure 43 was violated when the trial court briefly engaged in discussions regarding a note from the jury while Movant was not present in the courtroom. The government responds that because Movant was not denied the right to be present, his claim is without merit.

The episode to which Movant refers occurred on September 22, 2011. The court was in recess while the jury was in the midst of deliberations. Court resumed upon the receipt of a note from jury requesting the name of an alleged victim identified in the indictment as "M.M." [Doc. 174 at 113.] The trial judge read the

jury's question aloud and the attorneys began discussing whether and when the name of this individual had been disclosed during the trial.  [*Id.* at 114.]  At that point, counsel for the government noted on the record, "I would note Mr. Gish just arrived.  We may need to start over."  [*Id.*]  In Movant's presence, the Court then discussed what response should be given to the question.  The Court stated:  "Is is my intention to write a note on here, Mike Maurice, and send this note back to the jury.  Is there any objection to the Court doing that?"  [*Id.* at 115.]  Defense counsel replied:  "No, sir, given the fact his name was in evidence through Mr. Gundermann and through the cross of Mr. Gish by Mr. Gilfillan, I have no objection to that being done."  [*Id.*]

Criminal defendants have the right "to be present at all critical stages of . . . trial," including "the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence."  *United States v. Novaton*, 271 F.3d 968, 998 (11th Cir. 2001) (internal citations omitted).  Rule 43 provides, however, that a "defendant who was initially present at trial . . . waives the right to be present" if he is "voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of the obligation to remain during trial."  Fed. R. Crim. P. 43(c)(1)(A).

The undersigned finds that Movant waived his right to be present during this brief episode and his appellate counsel committed no error in failing to raise this issue on appeal.  *See Hodges v. Attorney Gen., State of Fla.*, 506 F.3d 1337, 1346 (11th Cir. 2007) (finding no constitutional violation where defendant waived right to be present "by virtue of his own deliberate conduct").[3]

### 7. Appellate Counsel's Failure to Raise Denial of Good Faith Jury Instruction

Movant claims that appellate counsel was ineffective for failure to raise on appeal the trial court's refusal to give Movant's "theory-of-the-case good-faith jury instruction."  [Doc. 202 at 19.]  The government responds that the trial court's refusal to give his requested instruction was proper because it was covered by the pattern jury instructions given by the trial judge.  The government further argues that Movant cannot show that the trial court's failure to give the requested instruction impaired his defense.  Movant counters that the pattern instruction was not sufficient because it "did not cover good faith reliance on a non-professional's advice."  [Doc. 227 at 11.]

---

[3] The undersigned notes that in his reply brief, Movant argues that if the trial court had refused to disclose the name of "M.M.," it is possible that the jury would not have reached a guilty verdict.  The charge in the indictment in which "M.M." is mentioned is Count 11.  [Doc. 1]  The jury found Movant not guilty as to Count 11.  [Doc. 138.]

After careful consideration, the undersigned agrees with the government. The pertinent instructions are as follows.[4]

Defendant's Request to Charge No. 17:

Good Faith Defense to Charge of Intent to Defraud

Good faith is a complete defense to the charges in the indictment since good faith on the part of the Defendant is inconsistent with intent to defraud or willfulness which is an essential part of the charges. The burden of proof is not on the Defendant to prove good faith, of course, since the Defendant has no burden to prove anything. The Government must establish beyond a reasonable doubt that the Defendant acted with specific intent to defraud as charged in the indictment.

One who expresses an honestly held opinion, or an honestly formed belief, is not chargeable with fraudulent intent even though the opinion is erroneous or the belief is mistaken; and, similarly, evidence which establishes only that a person made a mistake in judgment or an error in management, or was careless, does not establish fraudulent intent.

On the other hand, an honest belief on the part of the Defendant that a particular business venture was sound and would ultimately succeed would not, in and of itself, constitute "good faith" as that term is used in these instructions if, in carrying out that venture, the Defendant knowingly made false or fraudulent representations to others with the specific intent to deceive them.

[Doc. 102 at 2.]

---

[4] The undersigned notes that Movant's counsel first submitted Request to Charge No. 10 dealing with good faith, but later withdrew it. [Doc. 78 at 11-12; Doc. 174 at 19.]

Eleventh Circuit Pattern Instruction 17 Good-Faith Defense:

> "Good faith" is a complete defense to a charge that requires intent to defraud.  A defendant isn't required to prove good faith.  The Government must prove intent to defraud beyond a reasonable doubt.

> An honestly held opinion or an honestly formed belief cannot be fraudulent intent – even if the opinion or belief is mistaken.  Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent.

> But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Special Instruction No. 17 (2010).  The instruction given by the trial judge at Movant's trial tracked almost word for word the pattern jury charge and did not vary from it in any significant way.  [Doc. 174 at 104.]

"[A] criminal defendant is entitled to have the jury instructed on his theory of defense when there has been some evidence relevant to that defense presented at trial."  *United States v. Tubbs*, 652 F. App'x 750, 756 (11th Cir. 2016) (citing *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995)).  A trial court's "refusal to give a requested instruction is an abuse of discretion if:  (1) the instruction is correct; (2) the court did not address the substance of the instruction in its charge; and (3) the failure to give the instruction seriously impaired the

defendant's ability to present an effective defense."  *Id.* (citing *United States v. Sirang*, 70 F.3d 588, 593 (11th Cir. 1995)).

Defense counsel's requested good-faith charge was more than adequately addressed by the pattern instruction given at trial.  Moreover, Movant has failed to show that the trial court's decision to give the pattern charge impaired his ability to present an effective defense.  Movant's argument that the pattern instructions "did not cover good faith reliance on a non-professional's advice" is unpersuasive where defense counsel's requested instruction does not specifically address reliance on a non-professional's advice.  Therefore, the undersigned finds that Movant has failed to establish that his appellate counsel's failure to raise this issue on appeal was objectively unreasonable or that Movant was prejudiced by the same.

### B.    Alleged Errors By Trial Court

#### 1.    Alleged Error in Conducting Supplemental Jury Instructions without Movant Present

Movant claims that the trial court denied him his right to be present during each stage of his trial when it engaged in discussions regarding a jury question while Movant was not in the courtroom.  As discussed above in Section III.A.6., Movant waived his right to be present during this brief episode.  The trial court committed no error.  *See Hodges*, 506 F.3d at 1346 (finding no constitutional

violation where defendant waived right to be present "by virtue of his own deliberate conduct").

In addition, because this claim was available to Movant on appeal, but was not raised, it is procedurally defaulted. Movant has attempted to excuse his procedural default by asserting ineffective assistance of his appellate counsel. As discussed above, the ineffective assistance of counsel claim must fail. Therefore, Movant has failed to excuse his procedural default. This claim is also without merit.

### 2.      Alleged Error in Giving Pattern Jury Charge on Good Faith

Movant claims that his conviction is constitutionally invalid because the trial court refused to give the "theory-of-the-case defense jury instruction" requested by defense counsel. [Doc. 202 at 20.] The government responds that because this claim was available to Movant on appeal, but was not raised, it is procedurally defaulted. Movant does not address the issue of procedural default in his reply brief. As discussed above in Section III.A.7., this claim is without merit and has been procedurally defaulted.

### C.   Unconstitutionality of Federal Fraud Statutes

Lastly, Movant contends that the federal fraud statutes are unconstitutional on the ground that they are unconstitutionally vague, amount to an unconstitutional

bill of attainder, and allow for impermissible ex post facto punishment.  This claim is procedurally defaulted because it was available to Movant on appeal, but was not raised.  Movant has made no attempt to excuse his procedural default.  Accordingly, Movant has not shown that he is entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

It is not reasonably debatable that Movant's claims in his § 2255 motion lack merit.  Because Movant has not substantially shown that he was denied a

22

constitutional right, a COA is not warranted.  *See* 28 U.S.C. § 2253(c)(2); *Slack*, 529 U.S. at 483-84.

## V.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the motion to vacate be **DENIED** and that a COA be **DENIED.**  The Clerk is **DIRECTED** to withdraw the referral to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 9th day of June, 2017.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE