UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEOFFREY A. GISH, | |
| Movant, | CRIMINAL ACTION NO. 1:10-CR-0370-1-CAP |
| | CIVIL ACTION NO. 1:15-CV-591-CAP |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## O R D E R

This action is before the court on the magistrate judge's report and recommendation ("R&R") [Doc. No. 228]. The movant has filed objections thereto [Doc. Nos. 236 and 237].[1]

## I. Standard of Review

In reviewing a magistrate judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.

---

[1] It appears the movant filed two copies of the same set of objections. The only difference in the two documents appears to be additions of legal citations. The later-filed document [Doc. No. 237] was not timely filed, but was considered by the court.

§ 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation and internal quotation marks omitted). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b).

## II. Discussion

### A. Background

In 2010, the movant and his co-defendant, Myra Ettenborough, were indicted by a federal grand jury of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371 (Count One), four counts of mail fraud in

violation of 18 U.S.C. §§ 1341 and 2 (Counts Two through Five), and six

counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts Six

through Eleven) [Doc. No. 1.]

A trial was held from September 7, 2011, through September 23, 2011.

The Eleventh Circuit Court of Appeals summarized the evidence as follows:

> Between 2004 and May of 2006, the purported investment firm of
> Weston Rutledge raised approximately $30 million from over 300
> investors for primarily three investment programs. Geoffrey A.
> Gish was the head of Weston Rutledge. Myra Ettenborough was
> Gish's office and operations manager, with responsibility for
> managing almost all aspects of the company's business,
> employee, and interactions with its investors. Ettenborough
> handled all mail, managed and reconciled Weston Rutledge's
> numerous bank accounts, handled all banking transaction,
> checks and wires, and processed all payments to investors. Gish
> and Ettenborough communicated to investors how the programs
> worked, details of the investments' safety and security, the
> investments' performance and earnings and other information.
> They also provided all other employees with the information
> provided to investors.
>
> Ettenborough also wrote a newsletter that was distributed to
> investors. In one newsletter, she described how investors'
> principal would reside at a major bank in a non-interest bearing
> account with a block on it, which no one could touch during the
> investment period. The newsletter also purported to report
> investment results. Ettenborough provided standard document
> packages to investors showing substantial rates of return and
> created and distributed account statements to investors showing
> positive monthly earnings and increasing total account balances
> said to be from earnings. In March 2006, the last full month for
> which there were statements, the account balances as shown on
> investor statements reached $34 million.

In reality, virtually none of the representations made to investors was true. Of the $30 million raised by Gish, approximately $12 million was returned to investors to satisfy earnings and principal withdrawal demands. The rest went to Gish, Ettenborough, other third parties and various non-investment purposes. Ettenborough signed most of these checks. None of the investment funds went to any trading activity of any kind. Of course, the cash on hand at Weston Rutledge steadily declined over time. Upside down from the beginning, the gap between investor statements and cash on hand grew to almost $34 million by March 2006.

Various investigations of Weston Rutledge took place, beginning in late 2004 when the Georgia Secretary of State securities division subpoenaed Gish and Weston Rutledge. This investigation resulted in a cease and desist order and a civil fine. Instead of ceasing operations, Gish moved Weston Rutledge to a new office and resumed soliciting investors. Other investigations took place in both Arizona and Texas.

During this time, Gish and Ettenborough consulted a securities lawyer about their securities investment program Zamindari. They did not tell this lawyer about the Georgia investigation. Subsequently the lawyer withdrew his representation of Zamindari, informing him that his investment program was in violation of numerous securities laws and had the "indicia" of fraud. Gish did not further communicate with the lawyer, nor attempt to recover the unexpended retainer paid to him out of an account funded by investor monies.

In March and April of 2006, the SEC instituted its own investigation of Gish and his investment programs. On May 17, 2006, the SEC obtained a court order shutting down Weston Rutledge and appointing a Receiver for the business and approximately $1 million of investor funds remaining.

*United States v. Gish*, 518 F. App'x 871, 873-74 (11th Cir. 2013).

The jury convicted the movant of Counts One through Ten of the Indictment, and acquitted him on Count Eleven [Doc. No. 110]. Ettenborough was convicted of Counts One through Three and Six through Seven [Doc. No. 111]. This court sentenced the movant to 240 months' imprisonment, three years' supervised release, and ordered the movant to pay $17,245,275.63 in restitution [Doc. No. 140].

After the movant filed a timely notice of appeal, the Eleventh Circuit affirmed the movant's conviction and sentence by order dated May 16, 2013. *Gish*, 518 F. App'x at 871. The Eleventh Circuit considered and rejected the movant's arguments that (1) the jury was improperly instructed on the theory of deliberate ignorance; (2) testimony of three lawyers regarding their communications with the movant should not have been admitted at trial; (3) evidence regarding the Georgia Secretary of State's investigation was improperly admitted under Federal Rule of Evidence 404(b); and (4) the movant was sentenced in error. *Id.* at 874-75.

## B. Section 2255 Motion

The movant now collaterally challenges his convictions and sentences on the following grounds: (1) trial counsel was ineffective in failing to negotiate a plea deal; (2) trial counsel was ineffective at trial for failing to call

certain witnesses; (3) trial counsel was ineffective for failing to seek a severence; (4) trial counsel was ineffective for failing to object to a variance between the evidence and the court's instruction to the jury on materiality; (5) trial counsel was ineffective for failing to insist on jury instructions that would allow the jury to "parse out culpability on a temporal basis;" (6) appellate counsel was ineffective for failing to raise a Rule 43 error; (7) appellate counsel was ineffective for failing to raise the trial court's refusal to give an alleged theory of the defense good faith jury instruction; (8) the trial court erred in conducting "supplemental jury instructions" without the movant being present or having waived his right to be present; (9) the trial court erred in refusing to give the jury his requested good faith jury instruction; and (10) the federal fraud statutes are unconstitutional.

### 1. Ineffective Assistance of Counsel Claims

Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92; *Bottoson v.*

*Moore*, 234 F.3d 526, 532 (11th Cir. 2000) (stating that the court may resolve an ineffective assistance claim based on either prong).

Under the first prong, a movant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[C]ounsel's conduct is presumed reasonable, [and] a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). To prove ineffectiveness, a movant must show that his attorney's representation "fell outside the wide range of professionally competent assistance." *Id.* at 1314 (internal quotation marks omitted). When evaluating an attorney's performance, the court must be highly deferential and "avoid second-guessing counsel's performance." *Id.* Moreover, when reviewing counsel's performance, the court "must evaluate the reasonableness of counsel's performance from counsel's perspective at the time," not with the distortion of hindsight. *Id.* at 1316.

Under the second *Strickland* prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

is a probability sufficient to undermine confidence in the outcome."
*Strickland*, 466 U.S. at 694.

### a. Trial Counsel

#### i. Ground One

In Ground One of his motion to vacate, the movant argues that his attorney was deficient in proceeding with a good faith defense when that defense was futile. The magistrate judge rejected the claim, concluding that his counsel's decision to present a good faith defense to the conspiracy and mail and wire fraud counts does not amount to deficient conduct under the *Strickland* standard. In his objections, the movant argues that "if counsel had advised Mr. Gish that the law considered the conduct illegal even if Mr. Gish did not understand the law, then Mr. Gish would have pleaded guilty." More specifically, the movant contends that had he known that his statements to investors, which he had not confirmed were accurate but presented as if he knew they were accurate, was in itself illegal conduct, he would have pled guilty.

The two-prong *Strickland* test applies to a defendant's claim of ineffective assistance in connection with the rejection of a plea offer. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). With respect to the performance prong, the

defendant must show that "that counsel's representation fell below an objective standard of reasonableness." *Id.* (quoting *Strickland*, 474 U.S. at 58).

The plaintiff has failed to demonstrate that his attorney's performance fell below the objective standard of reasonableness. In fact, had counsel advised the movant to plead guilty solely on the grounds that he made representations to investors that he had not confirmed, there would be a question of whether counsel's conduct was professionally competent. Under the circumstances of this case, the indictment made extensive allegations of misconduct by the defendant—far beyond making statements as if he knew they were accurate when he had no legitimate basis for believing the statements. More importantly, the government offered evidence to support these allegations at trial. In the movant's defense, his counsel sought to negate the element of criminal intent by demonstrating that the movant acted in good faith. To that end, the movant testified at trial that he relied on what he was told by Zahra Ghods. Had the jury believed the movant's testimony, the criminal intent element of the charges against the movant would have been negated. Therefore, the defendant has in no way

demonstrated that no competent counsel would have taken the action that his counsel did take.

## ii. Ground Two

In Ground Two, the movant contends that had he known that his trial counsel would not call the following witnesses, he would have pled guilty: Todd Merolla, David Sayid, Don Moses, and Paul Gunderman. As an initial matter, Gunderman testified at trial; therefore, the movant's assertion with regard to that witness is factually inaccurate. The magistrate judge found that the movant failed to demonstrate prejudice, and the movant objected. Even if the movant could establish prejudice, he fails to demonstrate that his attorney's decision not to call certain witnesses fell below the objective standard of professionally competent assistance.

Counsel's decisions regarding witnesses are matters of trial strategy, and "counsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim." *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). The Eleventh Circuit has held that, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever second guess." *Waters v. Thomas*, 46 F.3d 1506,

1512 (11th Cir. 1995); *see also Solomon v. Kemp*, 735 F.2d 395, 404 (11th Cir. 1984) ("[w]hile attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made"); *Sanchez v. United States*, 782 F.2d 928, 935 (11th Cir. 1986) ("counsel will not be deemed constitutionally deficient merely because of tactical decisions"); *United States v. Long*, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses."). Indeed, "[c]onsidering the realities of the courtroom, more is not always better." *Chandler*, 218 F.3d at 1319. "Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others." *Id.* Moreover, allegations as to what a witness would have testified to are entirely speculative. *See Elso v. United States*, 550 F. App'x 815, 817 (11th Cir. 2013) (citing *Buckelew*, 575 F.2d at 521). "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Id.*; *see United States v. Rubin*, 433 F.2d 442, 445 (5th Cir. 1970) ("decisions as to whether or not to call certain witnesses to the stand, whether to ask or refrain from asking certain questions, and the like, are tactical determinations. Errors, even

egregious ones, in this respect do not provide a basis for post-conviction relief").

Because trial counsel has significant leeway to make strategic decisions at the time of trial, the fact that three of the four witnesses named by the movant were not called at trial is not sufficient to demonstrate substandard conduct on the part of trial counsel. Moreover, the movant's contention that had he <u>known</u> that his counsel would not call those witnesses, he would have pled guilty ignores the reality of trial strategy: decisions on which witnesses to call or not call are made in light of what evidence the government presents. In other words, the movant cannot establish that his attorney should have known—and informed him—at the plea negotiation stage of litigation which witnesses would be called at trial. Accordingly, the movant has in no way demonstrated his counsel's decisions about what witnesses to call at trial fell outside the wide range of professionally competent assistance.

### iii. Ground Three

In Ground Three, the movant contends his defense counsel rendered ineffective assistance of counsel because he did not seek to sever his trial from his co-defendant. The magistrate judge pointed out that counsel did in

fact file a motion to sever.  Therefore, the magistrate judge determined that the movant could not demonstrate ineffective assistance of counsel.

In his objections, the movant states only that he "disagrees with the magistrate's conclusion and request de novo review." [Doc. No. 236 at 4].  The Eleventh Circuit Court of Appeals has held, "In order to challenge the findings and recommendations of the magistrate, a party must . . . file with the Clerk of the Court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis of the objection." *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989).  "It is critical that the objection be sufficiently specific and not a general objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).  The movant's stated disagreement is insufficient.  Moreover, the court agrees with the magistrate judge's conclusion that—in light of counsel's attempts to sever the trial from that of his co-defendant— the movant cannot demonstrate that counsel's performance was outside the wide range of professionally competent assistance.

### iv. Ground Four

In Ground Four, the movant contends that his trial counsel rendered ineffective assistance by failing to object to the court's jury instruction on the

materiality element of the crimes.  As pointed out by the magistrate judge, the court gave the Eleventh Circuit Pattern Jury Charges as to mail fraud and wire fraud.  Materiality is an element of those offenses.  Accordingly, there was no basis for defense counsel to object to the pattern charge.  In his objections, the movant contends that the magistrate judge wrongly elevates pattern jury instructions to "gospel."

To the extent that the movant contends that the evidence was insufficient to support a finding of materiality—an element of the offenses, it would be to the defendant's benefit that the jury be charged on all elements of each offense.   Therefore, the movant has in no way demonstrated that his counsel's conduct was outside the wide range of professionally competent assistance.

### v. Ground Five

In Ground Five, the movant contends that his trial counsel rendered ineffective assistance of counsel because he did not insist on a jury instruction consistent with the government's evidence and allowed the jury to parse out culpability on a temporal basis.  The magistrate judge found that the instruction given by the court sufficiently directed the jury to consider each charge of the indictment and the evidence supporting it.  Additionally,

the magistrate judge pointed out that the movant failed to specify a jury instruction his attorney should have requested.

In his objections, the movant states that he "disagrees with the magistrate's conclusion, and believes further briefing is required to show that the record, taken as a whole, supports the claim that the jury instruction permits conflation of culpability across counts and across time." [Doc. No. 236 at 5]. The movant's stated disagreement is an insufficient objection. *See Heath*, 863 F.2d 815, 822; *Macort*, 208 F. App'x 781, 784. Moreover, the movant has had ample opportunity to brief his grounds for relief. He filed his initial § 2255 motion to vacate on July 28, 2014 [Doc. No. 202], and after receiving three extensions of time to do so, filed two reply briefs in support of the motion [Doc. Nos. 226 and 227]. Finally, the court agrees with the magistrate judge's conclusion that his counsel did not render ineffective assistance in relation to the jury charge as to the defendant's culpability for each count of the indictment.

### b. Appellate Counsel

Defendants have a right to effective assistance of counsel on appeal. *See, e.g., Halbert v. Michigan*, 545 U.S. 605 (2005); *Evitts v. Lucey*, 469 U.S. 387 (1985).

### i. Ground Six

In Ground Six, the movant argues that his appellate counsel rendered ineffective assistance of counsel by failing to raise a Rule 43 error on appeal. The movant contends that Federal Rule of Criminal Procedure 43 was violated when the trial court engaged in discussions regarding a note from the jury while the movant was not present in the courtroom. The magistrate judge found that the defendant was voluntarily absent from the courtroom, and the defendant has objected and contends that the "report oozes with bias, the court seems predisposed to deny relief rather than apply the legal rules in a forward manner to the uncontested facts." [Doc. No. 236 at 5]. While the court agrees with the magistrate judge's recommendation, there is an alternative reason Ground Six fails.

It is well settled that appellate counsel is not required to raise meritless issues on appeal. *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990); *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987). Furthermore, in appellate proceedings, the decision to raise select issues while omitting others is presumed to have been based on reasonable professional judgment. This is because effective appellate advocates are expected to winnow out weaker arguments, even when they might be meritorious, appellate counsel

does not perform deficiently merely by failing to raise every non-frivolous issue on appeal, provided that the strategic decision not to raise a particular issue was reasonable under the circumstances. *Jones v. Barnes*, 463 U.S. 745, 753–54 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991). When appellate counsel reviews the entire record, thinks about various claims, and then chooses to pursue only certain issues on appeal, counsel has not rendered ineffective assistance. *Id.* Although a non-appealed issue might have been successful if it had been raised, appellate advocacy must be "judged in its entirety." *Id.* To determine prejudice in the context of appellate counsel's effectiveness, the court must review the merits of the neglected claim or claims. *Heath*, *supra*, 941 F.2d at 1132. Failure to raise a claim will not be found prejudicial unless the claim would have a reasonable probability of success on appeal. *Id.*

Because there was no Rule 43 violation during trial, there can be no ineffective assistance for failure to raise the claim. Rule 43 provides that "the defendant shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict and at the imposition of sentence, except as otherwise provided by this rule." Fed. R. Crim. P. 43(a). The rule goes on to except proceedings involving only a conference or hearing

on a question of law.  Fed. R. Crim. P. 43(b)(3).  Moreover, the Eleventh

Circuit has held that a defendant who fails to demonstrate how the

proceedings missed were critical to the outcome of his case or how his

presence would have enhanced the fairness of those proceedings cannot

prevail on a Rule 43 challenge.  *Hodges v. Attorney Gen., State of Fla.*, 506

F.3d 1337, 1348 (11th Cir. 2007).  The short delay in the movant's arrival to a

discussion between the court and the attorneys as to how to respond to a jury

question seeking identification of a victim listed in the indictment did not

deprive the defendant of being present during a critical stage of the

proceedings.  This is particularly true when the record demonstrates that the

defendant arrived in the courtroom prior to the court's proposed response to

the jury question and the court's solicitation of objections from counsel.

Based on the foregoing, the movant has failed to demonstrate that an

appellate argument as to Rule 43 had a reasonable probability of success on

appeal.  Furthermore, appellate counsel choosing to omit Rule 43 as an issue

on appeal was a strategic decision that was not outside the wide range of

professionally competent assistance.

### ii. Ground Seven

In Ground Seven, the movant contends that appellate counsel rendered ineffective assistance by failing to raise on appeal the trial court's refusal to give the movant's theory-of-the-case good-faith jury instruction. As set forth above, winnowing arguments to raise on appeal is presumed to have been based on reasonable professional judgment. Given the trial court's use of the Eleventh Circuit Pattern Jury Charge as to the good faith defense,[2] the movant cannot demonstrate that appellate counsel's decision to not challenge on appeal the court's refusal to give the movant's requested jury charge on good faith was outside the wide range of professionally competent assistance.

### 2. Remaining Claims

The movant raises two claims of trial court error: (1) conducting supplemental jury charge discussions in his absence (Ground Eight); and (2) failing to give his requested jury charge on the good faith defense (Ground Nine). Finally, the movant contends that the federal fraud statutes are unconstitutional (Ground Ten). The magistrate judge found these three claims to be procedurally defaulted. In his objections, the movant argues

---

[2] Notably, the movant contends that the pattern charge on the good faith defense was improper because it does not address reliance on a non-professional's advice, but the movant's requested jury charge did not refer to reliance on a non-professional's advice either. *See* Defendant's Request to Charge [Doc. No. 78 at 11, Doc. No. 102 at 2].

simply that Ground Ten, his constitutional challenge to the federal fraud statutes, cannot be procedurally defaulted.

A § 2255 motion may not be used as a surrogate for appellate review. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *see Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). Grounds Eight, Nine, and Ten were not raised in the movant's direct appeal. Therefore, the magistrate judge's conclusion that the movant's final three claims have been procedurally defaulted is correct. The movant's objection in which he states with no supporting legal authority[3] that a claim challenging the constitutionality of the federal fraud statutes "cannot be procedurally defaulted" is simply incorrect.

---

[3] In the later-filed set of objections, the movant cites two cases purportedly in support of his contention that a constitutional challenge to a statute cannot be procedurally defaulted, *United States v. Saac*, 632 F.3d 1203 (11th Cir. 2011); *United States v. Palacios-Casquete*, 55 F.3d 557 (11th Cir. 1995). [Doc. No. 237 at 7]. Neither of these cases support the movant's contention. Rather, these cases stand for the proposition that a constitutional challenge to a statute is not waived through a guilty plea.

Because of the procedural default, Grounds Eight, Nine, and Ten cannot be raised in a § 2255 motion to vacate. They are, therefore, subject to dismissal.

### 3. Certificate of Appealability ("COA")

Section 2253 sets forth the standard a movant must satisfy to obtain appellate review of this court's disposition of his § 2255 motion to vacate:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -
>
> (A) the final order in a habeas corpus proceeding which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c)(1-3). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v . McDaniel*, 529 U.S.

473, 484 (2000) (internal quotations omitted).  The magistrate judge found that it is not reasonably debatable that the movant's claims lack merit and that he has not shown that he was denied a constitutional right.

In his objections, the movant states that he "believes jurists of reason would find the issues worthy of further development." [Doc. No. 236 at 7]. This statement of disagreement with the magistrate judge's determination is an insufficient objection.  Moreover, as set forth above, the movant's claims are wholly without merit.  Accordingly, the movant is denied a COA.  The movant may request a circuit judge to issue a COA since this court has denied the same.  Fed. R. App. P. 22 (b)(1, 2).  "Under the plain language of the rule, an applicant for the writ gets two bites at the appeal certificate apple: one before the district judge, and if that one is unsuccessful, he gets a second one before a circuit judge." *Jones v. United States*, 224 F.3d 1251, 1255 (11th Cir. 2000) (quoting *Hunter v. United States*, 101 F.3d 1565, 1575 (11th Cir. 1996)).

## III. Conclusion

Based on the foregoing, the movant's objections [Doc. Nos. 236 and 237] are OVERRULED, and the magistrate judge's R&R [Doc. 228], as reviewed herein, is ADOPTED as the order of the court.

IT IS ORDERED that the motion to vacate [Doc. 202] is DENIED, and that a COA is DENIED.

The clerk is DIRECTED to close the civil action associated with the filing of the motion to vacate.

SO ORDERED, this _29th_ day of September, 2017.


/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge